IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Benjamin P. Fields, <br><br> Plaintiff, <br><br> v. <br><br> Richland County Sheriff's Department, Richland School District Two, and Leon Lott, <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br> **[Defendants Richland County Sheriff's Department and Leon Lott]** |

### Introductory Statement

This is an action arising out of Plaintiff Benjamin P. Fields' ("Fields") termination as a deputy sheriff with the Defendant Richland County Sheriff's Department ("RCSD"). Fields was employed by Sheriff Leon Lott as a deputy sheriff until October 28, 2015, when he was terminated following an incident earlier that week at Spring Valley High School where Fields was assigned as a School Resource Officer. Fields filed this action on January 10, 2017, and thereafter served the Summons and Complaint on Defendants RCSD, Richland School District Two, and Sheriff Lott, who timely removed the action to this court on February 13, 2017.

In his Complaint, Fields purports to state claims against RCSD for defamation; negligence, gross negligence, recklessness and willfulness; public policy discharge; and violation of 42 U.S.C. § 1983 (race discrimination). He purports to state a claim against Sheriff Lott individually for race discrimination in violation of 42 U.S.C. § 1983, and claims against Richland School District Two for defamation and negligence, gross negligence, recklessness and willfulness.

RCSD and Sheriff Lott have filed a motion to dismiss this action as to them under Fed.R.Civ.P. 12(b)(6). This memorandum is in support of that motion.

**Argument**

1. **The claim of defamation against RCSD fails as a matter of law because Fields was a public official who must prove actual malice to prevail, and governmental entities like RCSD are immune from liability for employee conduct that constitutes actual malice.**

In his first cause of action, Fields purports to allege a claim of defamation against RCSD. This claim fails as a matter of law under controlling state precedent because, as a law enforcement officer, Fields was a "public official" within the meaning of *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964), such that he must prove constitutional actual malice to recover on a claim of defamation. State law, however, exempts governmental entities from liability on tort claims that require proof of actual malice. Accordingly, the first cause of action must be dismissed.

The South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-10 *et seq.*, provides that a "governmental entity is not liable for a loss resulting from" "employee conduct . . . . which constitutes . . . actual malice. . . ." S.C. Code Ann. § 15-78-60(17). RCSD is a governmental entity within the meaning of the SCTCA. *See* S.C. Code Ann. § 15-78-30(d) ("Governmental entity means the State and its political subdivisions."). As a deputy sheriff, Fields was a "public official" within the *N.Y. Times* rule that requires a public official seeking to recover for defamation to prove that the alleged false statement about him was made with actual malice – *i.e.*, with knowledge that the statement or insinuation was false or with reckless disregard for whether or not it was false. *See McClain v. Arnold*, 270 S.E.2d 124 (S.C. 1980) (police officer is public official under *N.Y. Times* rule); *Botchie v. O'Dowd*, 432 S.E.2d 458, 460-61 (S.C. 1993) (deputy sheriff is public official under *N.Y. Times* rule). Therefore, because in his capacity as a law enforcement officer, Fields was a public official who *must* prove constitutional actual malice to recover on his claim of defamation, RCSD is not liable on that claim under the express terms of § 15-78-60(17). *Gause v. Doe*, 451

S.E.2d 408 (S.C. Ct. App. 1994).

In *Gause*, a former City of Myrtle Beach police officer sued the city police department for defamation based on its accusing him of on-duty sexual misconduct with a citizen and firing him on that basis. The South Carolina Court of Appeals held that because police officers are "public officials" within the *N.Y. Times v. Sullivan* rule who must prove actual malice to prevail on a claim of defamation, and because § 15-78-60(17) exempts governmental entities from liability for employee conduct constituting "actual malice," Gause's claim of defamation against the city failed as a matter of law and was properly dismissed. *Gause*, 451 S.E.2d at 409. *Gause* remains the law of South Carolina and compels the dismissal of the purported claim of defamation against RCSD. *See Trexler v. Richland County*, 2017 WL 193281, at * 2 (S.C. Ct. App. 2017) (unpublished) (copy attached).

2. **The claim of negligence, gross negligence, recklessness and willfulness fails as a matter of law because Fields was an at-will employee as a matter of law and, as such, RCSD owed him do duty to investigate before terminating his employment.**

In his second cause of action, Fields purports to state a claim against RCSD for "Negligence, Gross Negligence, Recklessness and Willfulness." More specifically, he alleges that RCSD "owed a clear duty to Plaintiff to fully and completely conduct an investigation into [his] actions on October 27, 2015[ ]" and "owed a duty to Plaintiff to fairly and honestly report the findings of such an investigation. . .." [Complaint, paras. 50 and 51]. Fields contends that RCSD breached its purported duty "by failing to conduct any investigation prior to taking the influential action of terminating Plaintiff's employment[ ]" and by "failing to properly advise and report to the media and public at large that Plaintiff's actions fell squarely within [RCSD] policy. . .." [Complaint, paras. 52 and 53]. *Gause* dooms this claim, too, because as a deputy sheriff, Fields served at the pleasure

3

of Sheriff Lott, S.C. Code Ann. § 23-13-10, and South Carolina law is unequivocal that an at-will employer owes no duty to an at-will employee to investigate allegations of misconduct made against him prior to dismissing the employee. *Gause*, 451 S.E.2d at 409-10.

In *Gause*, the plaintiff claimed that the Myrtle Beach Police Department was negligent in failing to adequately investigate his female accuser's allegations, in assuming that he was guilty based on his accuser's allegations alone, and in refusing to reevaluate his termination after a grand jury declined to indict him. The South Carolina Court of Appeals rejected this claim, explaining:

> To prove his negligence claim, Gause must show: (1) the MBPD owed him a duty to do or not to do any of the things alleged [as the basis for his negligence claim]; (2) the MBPD breached this duty; (3) Gause was injured, and; (4) the MBPD's breach of duty proximately caused this injury. A negligence *claim is insufficient if one of these elements is absent.*
>
> Gause fails to meet the first element of a negligence claim because his complaint does not allege he was anything other than an at-will employee who could be terminated at any time, for any reason, or for no reason at all, irrespective of any inadequate investigations, false assumptions, or failures to reevaluate on the part of the employer.
>
> We therefore hold the trial court properly dismissed Gause's negligence claim.

*Gause*, 451 S.E.2d at 409-10 (internal citations and footnotes omitted) (emphasis added).

This Court has adhered to *Gause* and rejected as a matter of law claims of negligence and gross negligence based on allegations that an employer inadequately investigated alleged misconduct before terminating an at-will employee. *See Anthony v. Atlantic Group, Inc.*, 909 F. Supp.2d 455, 472-74 (D.S.C. 2012); *Campbell v. Int'l Paper Co.*, 2013 WL 1874850, at * 7-8 (D.S.C. 2013). The South Carolina Court of Appeals, too, has continued to apply *Gause* in this manner. *See Parsons v. Smith*, 2015 WL 4755608, at * 2 (S.C. Ct. App. 2015) (unpublished) (copy

4

attached).

Because Fields was an at-will employee who, by statute, served at Sheriff Lott's pleasure, RCSD owed him no duty to investigate his alleged wrongdoing much less to accurately report the findings of that investigation to the public. Accordingly, the second cause of action must be dismissed.

3.  **The claim of wrongful discharge in violation of public policy fails as a matter of law because the SCTCA provides that a governmental entity is not liable for a loss resulting from employee conduct that constitutes "intent to harm," and a claim of wrongful discharge necessarily involves an intent to harm; because no clear mandate of public policy supports Fields' claim; and because there are statutory remedies for challenging a purported discriminatory termination where the discrimination is based on an unlawful reason such as race.**

In his third cause of action, Fields purports to state a claim for the tort of retaliatory discharge in violation of public policy. This claim fails as a matter of law because retaliation – the *sine qua non* of a claim of retaliatory discharge in violation of public policy – by definition involves conduct involving "intent to harm" and, as such, RCSD is exempt from liability for any such claim under the explicit terms of S.C. Code Ann. § 15-78-60(17). *See Gause, supra*, 451 S.E.2d at 409 (because proof of "actual malice" is an essential element of a public official's claim of defamation, a governmental entity is exempt from liability on that claim under § 15-78-60(17)'s exemption for employee conduct involving "actual malice"). The claim of retaliatory discharge in violation of public policy further fails as a matter of law because Fields has not identified any clear mandate of public policy supporting his claim and because absent a specifically identified and legislatively declared public policy, the public policy of South Carolina favoring at-will employment prevails. Finally, the claim fails because there are statutory remedies available to challenge an allegedly discriminatory termination from employment where the discrimination is based on an unlawful

5

reason, like race.

In *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that "[w]here the retaliatory discharge of an at-will employee constitutes a violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises." *Id.*, 337 S.E.2d at 216. Stressing the narrowness of its holding and attempting to prevent the exception from swallowing the rule that employers may dismiss at-will employees for a good reason, bad reason or no reason, the *Ludwick* court added: "[W]e emphasize that a cause of action for wrongful discharge of an at-will employee shall exist only where the alleged retaliatory discharge constitutes a clear violation of a mandate of public policy." *Id.* By *Ludwick's* express terms, therefore, the tort of wrongful discharge requires proof that an at-will employee's discharge was "retaliatory" *and* that it violated "a clear mandate of public policy." *See McNeil v. South Carolina Dep't of Corrections*, 743 S.E.2d 843, 847 (S.C. Ct. App. 2013) (affirming dismissal of wrongful discharge claim because, *inter alia*, plaintiff "does not allege her termination was retaliatory" and "merely alleges that she was terminated 'for personal, political, pretextual and scapegoating purposes.'").

By definition, a retaliatory discharge involves an intent to harm. *See Jackson v. Birmingham Bd. of Educ'n*, 544 U.S. 167, 173 (2005) ("Retaliation is, by definition, an intentional act."). Because S.C. Code Ann. § 15-78-60(17) exempts a governmental entity from liability for employee conduct that involves "intent to harm," RCSD is immune from suit on the claim of wrongful discharge. *See Gause v. Doe*, 451 S.E.2d at 408-09; *see also Tatum v. Medical Univ. of S. Carolina*, 552 S.E.2d 18, 20 (S.C. 2001) ("The Tort Claims Act does not create causes of action. Rather, it removes the common law bar of sovereign immunity in certain circumstances, but only to the extent permitted

6

by the Act itself."), *abrogated on unrelated grounds* in *Mendenhall v. Anderson Hardwood Floors, LLC*, 738 S.E.2d 251 (2013); *Adkins v. Varn*, 439 S.E.2d 822, 824 (S.C. 1993) (where one of § 15-78-60's enumerated exceptions to governmental liability applies, entity "is immune from suit"). And, as the Fourth Circuit held in *Stewart v. State of North Carolina*, 393 F.3d 484 (4th Cir. 2005), a state agency like RCSD does not waive any immunity that it enjoys in state court by removing to federal court an action that includes state law claims. *See id.*, 393 F.3d at 490 ("North Carolina chose to employ the removal device to have the issue of sovereign immunity resolved in a federal, rather than a state, forum. . . .. We therefore hold that North Carolina, having not already consented to suit in its own courts [on certain state law claims], did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question.").

Because RCSD is immune from suit on a claim of retaliatory discharge in violation of public policy, the third cause of action must be dismissed.

---

Even if Fields' wrongful discharge claim were not barred by the SCTCA and the doctrine of sovereign immunity, that claim fails because Fields has not identified any clear legislative mandate of public policy that his termination violated. For this additional reason, his claim of wrongful discharge in violation of public policy must be dismissed.

"The determination of what constitutes public policy is a question of law for the courts to decide." *Barron v. Labor Finders of South Carolina*, 713 S.E.2d 634, 638 (S.C. 2011). In that regard, "'[t]he primary source of the declaration of public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration.'" *Id., quoting Citizens' Bank v. Heyward*, 133 S.E. 709, 713 (S.C. 1925).

7

The South Carolina Supreme Court, in recently declining to extend the public policy exception to at-will employment to a store manager who reasonably suspected that a customer had shoplifted merchandise, reported this suspected criminal activity to law enforcement, and was fired for doing so, cautioned "restraint when undertaking the amorphous inquiry of what constitutes public policy." *Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385, 387 (S.C. 2015). The court explained that because "the question of public policy is first and foremost a matter of legislative concern[,]" 768 S.E.2d at 388, the court must "[g]ive [ ] deference to the General Assembly in matters of public policy[.]" *Id.*, at 389. Emphasizing that "the question before us today is not whether this state applauds citizen participation in the criminal justice system, but whether this interest mandates an exception to the at-will employment doctrine[,]" the supreme court concluded:

> [T]he public policy of this state finds expression in our longstanding adherence to at-will employment; any exception to this doctrine, which is itself firmly rooted in the public policy of this state, should emanate from the General Assembly, and from this Court only when the legislature has not spoken. Absent a more clear and articulable definition of policy from the General Assembly regarding those who report suspected crimes, we refuse to broaden the exception to the at-will employment doctrine. . ..

*Taghivand*, S.E.2d 768 at 389.

In South Carolina, the General Assembly has declared that a deputy sheriff serves at the pleasure of the sheriff who appointed him. S.C. Code Ann. § 23-13-10. This legislative policy is so strong that the state supreme court has held it cannot be compromised by a sheriff – *i.e.*, a sheriff cannot voluntarily limit his statutory authority to discharge a deputy at will by issuing policies or handbooks that purport to restrict the at-will status of deputies. *Botchie v. O'Dowd*, 432 S.E.2d 458, 460 (S.C. 1993). Thus, Fields' claim that terminating a deputy sheriff for doing his job "according to policy" or "by the book" contravenes a clear mandate of public policy is refuted rather than

8

supported by legislative policy. Even in circumstances where the General Assembly has not explicitly stated that an employee serves at his principal's pleasure, as it has with deputy sheriffs, South Carolina's courts have consistently rejected claims of wrongful discharge based on allegations that the plaintiff was unfairly fired for doing his or her job well and for acting as a good employee should act. *See, e.g., Taghivand*, 768 S.E.2d at 388.; *Antley v. Shepherd*, 532 S.E.2d 294, 297-98 (S.C. Ct. App. 2000). This court has, too. *See, e.g., Desmarais v. Scientific Research Corp.*, 145 F. Supp. 3d 595 (D.S.C. 2015). Indeed, as Judge Norton observed in *Desmarais*, "courts in this district have held that a plaintiff's failure to identify the source of a clear mandate of public policy [alone] warrants dismissal [of a *Ludwick* claim for wrongful discharge]." *Id.*, 145 F. Supp. 3d at 599.

Because Fields has not identified a clear mandate of public policy that his termination violated and because the public policy of this State is that deputies serve at the pleasure of their sheriff, Fields' claim against RCSD for the tort of wrongful discharge fails as a matter of law. Accordingly, that claim must be dismissed.

_____

Finally, insofar as Fields' claim of wrongful discharge is predicated on alleged differential treatment – discrimination – there are statutory remedies available to redress any alleged unlawful discrimination (*e.g.*, race-based), and the availability of one or more statutory remedies in and of itself suffices to defeat a claim for wrongful discharge in violation of public policy. *See Barron*, 713 S.E.2d at 637 (public policy exception to at-will employment is not available to an employee who has a statutory remedy for the discharge); *see also Martin v. Boeing Co.*, 2016 WL 7239914, at * 3-4 (D.S.C. 2016); *Newman v. S.C. Dep't Empl. and Workforce*, 2010 WL 4666360 (D.S.C. 2010) (both dismissing public policy claims due to existence of statutory remedies). To the extent that

9

Fields is complaining of an unfair or arbitrary termination rather than an unlawfully motivated one, the claim is not actionable because he is simply attacking the legislative decision that deputies serve at the pleasure of the sheriff.

Insofar as Fields alleges that he was terminated because of his race, multiple statutory remedies exist to challenge a racially discriminatory termination, including the South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, which he has expressly invoked in this action. Where a statute affords a remedy for challenging an alleged wrongful termination, no action for the tort of wrongful discharge will lie. *See Barron*, 713 S.E.2d at 637; *Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (S.C. 1992); *Stiles v. American Gen'l Life Ins. Co.*, 516 S.E.2d 449, 452 (1999) (Toal, J., concurring). This is so regardless of whether the plaintiff pursues the statutory remedy and regardless of whether the remedy available under the statute is limited and/or there are procedural prerequisites to invoking the remedy. *See Newman*, 2010 WL 4666360, at * 4 ("That the available remedies under these Acts may be limited and that the Acts may impose procedural hurdles to recovery do not modify th[e] conclusion [that the existence of these statutory remedies preclude a *Ludwick* claim for the tort of wrongful discharge]. To the contrary, such restrictions reflect a legislative judgment which this court should not allow to be circumvented through pursuit of a common law *Ludwick* claim."); *see also Martin v. Boeing Co.*, 2016 WL 7239914, at * 3-4 (D.S.C. 2016) (plaintiff's choice not to pursue available statutory remedy for challenging his termination did not alter fact that remedy existed and hence *Ludwick* claim was foreclosed as a matter of law).

Insofar as Fields' public policy claim is based on his being terminated arbitrarily or without

good or adequate – or even any – cause, the claim is not actionable because it is nothing more than a challenge to the doctrine of at-will employment which both the South Carolina Supreme Court and the United States Supreme Court have repeatedly upheld. The at-will doctrine allows an employer to terminate an employee for a good reason, a bad reason, or no reason, and, as *Taghivand* makes clear, the fact that the employee or even the court may view the termination as unfair or unwise does not permit the court to intrude on the employer's prerogative. *See Taghivand*, 768 S.E.2d at 388-89. Unless the termination is a retaliatory one that violates a clear mandate of legislatively established public policy – and, as previously discussed, that is *not* the situation here – the employer's prerogative to terminate at will prevails. *Taghivand*, 768 S.E.2d at 388-89; *McNeil*, 743 S.E.2d at 193.

Just as state law does not intrude on the employer's prerogative to dismiss employees at will, absent unlawful motivation, neither does federal law. In *Engquist v. Oregon Dep't of Agriculture*, ___ U.S. ___, 128 S. Ct. 2146 (2008), the Court reiterated that the Fourteenth Amendment's "Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable." *Engquist*, 128 S. Ct. at 2151. And the Supreme Court made explicit that neither is "the Equal Protection Clause implicated where . . . government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.*, 128 S. Ct. at 2155. As *Engquist* explains, "recognition of a class-of-one theory of equal protection in the public employment context – that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all – is simply contrary to the concept of at-will employment[,]" and "[t]he Constitution does not require repudiating that familiar doctrine." *Id.*, 128 S. Ct. at 2156.

11

Thus, to the extent that Fields' public policy claim is predicated on alleged racial discrimination, the claim fails because there are statutory remedies to redress a racially-motivated termination. To the extent that the public policy claim is predicated on general notions of unfairness, arbitrariness, or differential treatment, the claim fails because the doctrine of at-will employment permits terminations for arbitrary, unfair and/or irrational reasons. Consequently, the claim must be dismissed.

4. **The claim of racial discrimination in violation of 42 U.S.C. § 1983 fails as a matter of law because RCSD is not a "person" within the meaning of 42 U.S.C. § 1983 and because the Complaint fails to state a factually plausible claim against Sheriff Lott individually.**

In his sixth cause of action, Fields purports to state a claim of race discrimination under 42 U.S.C. § 1983 against both RCSD and Sheriff Lott. The claim against RCSD fails as a matter of law because RCSD is not a "person" within the meaning of § 1983 and thus, under *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), cannot be sued in state or federal court under that statute. The claim against Sheriff Lott individually fails to state a factually plausible claim for relief and thus fails under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and its progeny.

      a.     **RCSD is not a "person" subject to suit under 42 U.S.C. § 1983.**

It is firmly established that the office of sheriff in South Carolina is a state office and that, therefore, both sheriffs and their deputies are state, not county, officials. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Cone v. Nettles*, 417 S.E.2d 523, 524-25 (S.C. 1992). Because the sheriff is a state official, the sheriff's office or sheriff's department, though referred to as a county office/department, is a *state* department/office. *See Davis v. Richland County*, 2013 WL 6068880 (D.S.C. 2013); *Werts v. County of Richland*, 2007 WL 914039, at * 6 (D.S.C. 2007); *Kroger v. Newberry County Sheriff's Dep't*, 2012 WL 4511057 (D.S.C.), R & R adopted 2012 WL 4513850

(D.S.C. 2012). The Supreme Court held in *Will* that the States and their agencies and departments are not "persons" as that term is used in § 1983 and, therefore, are not subject to suit under § 1983 in state *or* federal court. *Will*, 491 U.S. at 60-61; 70-71. As an arm of the State of South Carolina, RCSD is not a "person" within the meaning of § 1983 and cannot be sued thereunder. *Kroger*, 2012 WL 4511057, at * 2; *Werts*, 2007 WL 914039, at * 6. For this reason, the § 1983 claim against RCSD must be dismissed.

### b. No factually plausible claim alleged against Sheriff Lott individually.

Insofar as Fields purports to state a § 1983 claim for race discrimination against Sheriff Lott individually, the Complaint fails to state a factually plausible claim of racial discrimination against Sheriff Lott in his individual capacity. Thus, the claim must be dismissed.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clearly set forth the minimum requirements for a complaint that purports to state a federal constitutional claim against a governmental official:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our [earlier] decision in [*Bell Atlantic Corp. v.*] *Twombly*[, 550 U.S. 544 (2007)]. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior

> era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, 556 U.S. at 678-79 (internal citations and quotations omitted; second alteration original).

As in *Ashcroft*, Fields alleges that he was discriminated against because of his race "but the complaint does not contain any factual allegations sufficient to plausibly suggest [Sheriff Lott's] discriminatory state of mind." *Id.*, 556 U.S. at 683. And allegations that Defendants RCSD and Lott discriminated against Fields in the terms and conditions of his employment – including termination – because of his race "are conclusory and not entitled to be assumed true." *Id.*, 556 U.S. at 681.

The Fourth Circuit has relied on *Iqbal* at least twice in holding that allegations that a plaintiff was discriminated against by his or her employer because of race are conclusory allegations that are not entitled to be assumed true. *McCleary-Evans v. Maryland Dep't of Transp'n, State Hwy. Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015); *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010). What is required is not conclusory allegations of racial discrimination but factual averments "establishing the plausibility of that allegation." *Coleman*, 626 F.3d at 190-91. *Accord,*

*McCleary-Evans*, 780 F.3d at 585-86 ("The allegation that the Highway Administration did not hire [plaintiff] because its decision makers were biased is simply too conclusory."). Because Fields has not pled facts establishing the plausibility of his claim that Sheriff Lott discriminated against him because of his race, the § 1983 claim against Sheriff Lott in his individual capacity fails to state a legally cognizable claim and must be dismissed.

## **Conclusion**

For the foregoing reasons, Defendants RCSD and Leon Lott request that the Court grant their motion to dismiss.

s/Vance J. Bettis
Vance J. Bettis (FID 1323)
Gignilliat, Savitz & Bettis, LLP
900 Elmwood Ave., Suite 100
Columbia, SC   29201
Phone:   (803) 799-9311
Fax:       (803) 254-6951
Email: vbettis@gsblaw.net

Attorney for Defendants Richland County Sheriff Department and Leon Lott

Columbia, South Carolina

February 13, 2017